

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

Rod J. Rosenstein
United States Attorney

Judson T. Mihok
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
Judson.Mihok@usdoj.gov

October 20, 2010

Alan Bussard
405 Allegheny Avenue
Towson, MD 21204

Re:   United States v. Damon Gerard Dickerson, Criminal No. CCB-09-0402

Dear Mr. Bussard:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on **Thursday, October 28, 2010** it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count Two of the Indictment pending against him, charging him with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense that the Defendant has agreed to plead guilty, and that this Office would prove if the case went to trial, are as follows:

(a)   First, that prior to March 5, 2009, the Defendant had been convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year and the state

1

had not restored the Defendant's civil rights following that conviction;

(b)  Second, that the Defendant knowingly possessed a firearm, that is a Bersa 9 mm pistol, model Thunder 8, s/n 790520; a Ruger .357 revolver, model SP101, s/n 573-59010; and a Akkar Silah Sanayi .20 gauge shotgun, s/n 7601811; and

(c)  Third, the possession was in or affecting interstate commerce.

### Penalties

[handwritten: 924(e)] [handwritten: mandatory minimum 15 years] [handwritten initials: CB/, USA, KCB, RD, JM]

3. The maximum sentence provided by statute is life imprisonment, a five year term of supervised release and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment per count pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto that this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

a. The Defendant is an Armed Career Criminal, so the base offense level starts at level **34** pursuant to USSG §4B1.4(b)(3)(A). There is a mandatory minimum term of 15 years of imprisonment that the Defendant must service pursuant to law. 18 U.S.C. § 924(e).

b. This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Thus, the final adjusted offense level is **31**.

7. The Defendant understands that, for sentencing purposes, he is stipulating and agreeing that he is an Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and USSG §4B1.4(b)(3)(A).

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence of 188 months, to be followed by three years of supervised release, and will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the count of the Indictment that this Office has agreed to dismiss at sentencing.

## Plea Terms Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 188 months of incarceration, to be followed by three years of supervised release, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of supervised release.

In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). If the Court accepts the terms of this plea agreement, the government will move to dismiss the remaining count at sentencing.

### Waiver of Appeal (Rule 11(c)(1)(C)

12. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction. Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 188 months imprisonment and a term of three years of supervised release, as well as an order of forfeiture, agreed to in this case as well as whatever fine or order of restitution that may be imposed and any issues that relate to the establishment of the advisory guidelines range. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

(a) The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 188 months and the government may withdraw if the Court wishes to impose a sentence below 188 months and/or the sentence does not include three years of supervised release. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

14. The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence. Specifically, the court will order the forfeiture of a Bersa 9 mm pistol, model Thunder 8, s/n 790520; a Ruger .357 revolver, model SP101, s/n 573-59010; a Akkar Silah Sanayi .20 gauge shotgun, s/n 7601811; and any ammunition involved in the offenses. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

15. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

16. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Obstruction or Other Violations of Law

17. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement that would justify a finding of obstruction of justice under USSG §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its

obligations under the agreement pursuant to this paragraph.

<u>Entire Agreement</u>

18.  This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

<div style="margin-left:40%">
Very truly yours,<br>
Rod J. Rosenstein<br>
United States Attorney<br><br>
By: _____<br>
Judson T. Mihok<br>
Assistant United States Attorney
</div>

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

10-9-10
Date

Damon Gerard Dickerson

I am Mr. Dickerson's attorney.  I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him.  He advises me that he understands and accepts its terms.  To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/9/10
Date

Alan Bussard, Esq.

## ATTACHMENT A

**The defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.**

**DAMON GERARD DICKERSON**, was born in 1972 and has been a lifelong resident of Baltimore, Maryland. Prior to March 5, 2009, Damon Gerard Dickerson qualifies as an Armed Career Criminal due to the instant offense and the following felony convictions:

1. On January 18, 1995, the defendant was arrested on charges related to Possession with Intent to Manufacture/Distribute/Dispense a Controlled Dangerous Substance. On or about March 3, 1995, the defendant plead guilty and was sentenced to one year in Circuit Court for Baltimore City, Case Number 295062024; he was paroled on August 4, 1995.
2. On February 26, 1999, the defendant was arrested and charged with Possession with Intent to Manufacture/Distribute/Dispense a Controlled Dangerous Substance. On or about March 22, 1999, the defendant was convicted in Baltimore County Circuit Court, Case Number 03-K-00984; upon that conviction, the defendant was sentenced on January 25, 2002, to 10 years (all suspended) and 5 years probation.
3. On April 12, 2003, the defendant was arrested and charged with Possession with Intent to Distribute and Possession of a Controlled Dangerous Substance, Assault and a number of other offenses. The defendant ultimately pled guilty to Distribution of a Controlled Dangerous Substance and Assault Second Degree on May 1, 2003 in Circuit Court for Baltimore City, Case Number 103121047; on that conviction, the defendant was sentenced on September 27, 2005, to 14 years incarceration (13 years, 8 months suspended), and 4 years of probation. The defendant was still on that probation when he was arrested in connection with these charges.

On March 5, 2009, **DAMON GERARD DICKERSON** was stopped as he was driving (and the sole occupant of) a silver Jaguar in the 700 block of Harford Road, Baltimore, Maryland, after he was positively identified by Baltimore City Police Officers as being the subject of an active arrest warrant. During a search incident to arrest, officers recovered 4 small plastic bags that contained a white rock-like substance later determined to be cocaine base from **DICKERSON's** jacket. Further search of the car (to include a compartment fashioned out of the dome light of the vehicle) resulted in the recovery of approximately 19 additional small plastic bags containing a white rock-like substance as well as a white powder, which later tested positive for cocaine base and cocaine. Further search of **DICKERSON's** person resulted in the recovery of another white rock-like substance, later determined to be cocaine base from his underarm. Officers located a Comcast bill in the car which showed an address of 7117 Harford Road, Apt. B.

8

The officers obtained a search warrant from the District Court for the State of Maryland and executed that search warrant on March , 2009. The residence was a small one bedroom apartment with an open floor plan. In plain view on a table next to the sofa, there were 2 digital scales with white residue (later determined to be cocaine), 1 plastic bag with small plastic bags (identical to those seized from **DICKERSON** and his vehicle), one of which contained a white rock-like substance which later tested positive for cocaine base; and an Ajax can with a false bottom that contained loose white rocks (cocaine base) and marijuana. In the closet just several steps away from where **DICKERSON** had been packaging and storing cocaine, cocaine base, and marijuana, officers located a loaded Bersa 9 mm pistol, model Thunder 8, s/n 790520; a loaded Ruger .357 revolver, model SP101, s/n 573-59010; and a Akkar Silah Sanayi .20 gauge shotgun, s/n 7601811. When the serial number for the .20 gauge shotgun was run, it showed that it had been reported stolen in Harford County on December 13, 2007.

11-9-10
Date

DAMON GERARD DICKERSON